matic Surface Sander 16″. The protests herein are overruled as to all other merchandise.

Judgment will be entered accordingly.

(C.D. 4028)

PACIFIC INSTRUMENTS CORP. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 3, 1970)

*Stein & Shostak* (*Arthur E. Schwimmer* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Robert T. Richardson* and *Velta A. Melnbrencis*, trial attorneys), for the defendant.

Before RAO, FORD, and NEWMAN Judges

FORD, Judge: This case is directed against the classification of certain articles designated as foot controls, typewriter controls, microphones and telephone adapters used with dictating and transcribing equipment manufactured by plaintiff. Said items were classified under

the provisions of paragraph 353, Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, as other articles suitable for producing, rectifying, modifying, controlling or distributing electrical energy and assessed with duty at the rate of 15 per centum ad valorem. Alternatively defendant contends the proper classification may be found in the language of said paragraph 353, as modified, *supra*, as switches or switchgear which carries with it the rate of 17½ per centum ad valorem.

Plaintiff contends the proper classification of said articles is to be found within the language providing for parts of articles having as an essential feature an electrical element or device as set forth in paragraph 353, Tariff Act of 1930, *supra*, as modified by trade agreements 97 Treas. Dec. 157, T.D. 55615, and 98 Treas. Dec. 51, T.D. 53816.

The pertinent portions of the provisions involved herein provide as follows:

Paragraph 353, as modified by T.D. 51802:

> Articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy, * * * all the foregoing (not including electrical wiring apparatus, instruments, and devices), finished or unfinished, wholly or in chief value of metal, and not specially provided for:
>
>> Switches and switchgear which are not wiring apparatus, instruments, or devices; * * * _____ 17½% ad val.
>
> \*     \*     \*     \*     \*     \*     \*
>
>> Other articles (except * * *)_____ 15% ad val.

Paragraph 353, as modified by T.D. 55615 and T.D. 55816:

> Articles having as an essential feature an electric element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, all the foregoing and parts thereof, finished or unfinished, wholly or in chief value of metal and not specially provided for:
>
> \*     \*     \*     \*     \*     \*     \*
>
>> Other (except * * *) _____ 12½% ad val.
>> [or] 11½% ad val.

There are three issues presented in this case which are as follows: Does the evidence establish the four articles involved to be parts? If so, does the evidence establish the dictating and transcribing machines with which they are used to fall within the purview of the lan-

guage articles having as an essential feature an electrical element or device contained in paragraph 353, *supra*. Finally, whether the foregoing language is more specific than the classified provision of paragraph 353, *supra*, covering articles suitable for producing, rectifying, modifying, controlling or distributing electrical energy from which the provision for switches and switchgear was carved.

The test to be utilized to determine whether an article constitutes a part was clearly and explicitly set forth in the case of *J. J. Boll, et al.* v. *United States*, 55 CCPA 86, C.A.D. 937 (1968). The court therein made the following statement:

> * * * The test for provisions for "parts" is whether the imported article is dedicated to use as a part of the specified article. *United States* v. *Ford Motor Co.*, 51 CCPA 22, C.A.D. 831. There certain parts employed in internal combustion engines were held classifiable as parts of internal combustion engines rather than as parts of automobiles, because the engines in which the parts were used were not dedicated to use in automobiles. In *Gallagher & Ascher Co.* v. *United States*. 52 CCPA 11, C.A.D. 849, certain auxiliary automobile heaters were held to be parts of automobiles upon a showing that they were dedicated solely to use in automobiles and served no other purpose than as parts of automobiles.
>
> From the above it is apparent that the test of whether the present tubes are "parts" is one of dedication rather than chief use, as in *Ford Motor*. * * *

With the question of dedication in mind, we find that all of the importations involved, in their condition as imported, were dedicated to use with plaintiff's dictating or transcribing machines. The witness indicated this to be so because they are plugged into said machines and the plug and the circuitry of the machines restricted their use to only machines of plaintiff's manufacture. The foot control and typewriter control contribute to the efficient operation of the person transcribing the dictation, permitting the starting, stopping and causing the machine to repeat. *Gallagher & Ascher, supra*. Likewise the microphone and telephone adapters not only serve a useful purpose but permit the machine to be used in the manner for which they were designed as well as increasing the efficiency of operation. *Trans Atlantic Company* v. *United States*, 48 CCPA 30, C.A.D. 758 (1960).

We are therefore of the opinion that plaintiff has established the four items involved to be "parts" of the dictating and transcribing machines of plaintiff.

The evidence is abundantly clear that the dictating and transcribing machines manufactured by plaintiff do have as an essential feature an electrical element or device. The witness testified that said machines record by means of a reuseable plastic media which can be magnified. The machine contains a transistorized amplifier and consists of transis-

tors, resistors, capacitors, transformers and the circuitry and an electric motor all of which are necessary to its operation. Plaintiff has therefore established to our satisfaction the four involved items to be parts of articles having as an essential feature an electrical element or device.

The primary issue is whether the claimed provision or the classified provision of paragraph 353, *supra*, more specifically describes the articles involved herein. Consideration will first be given to the language switch and the switchgear which was carved out of the classified provision by trade agreement. The record does establish that all of the articles involved do contain at least one switch. It is apparent that as to the microphone and telephone pickup, the primary purpose is to convert voice or acoustical energy into electrical energy so as to permit the recording of the voice. The foot control and typewriter control which contain switches are connected by mechanical means to operating levers and in turn connected by means of a cable to switches contained in the machine. These two articles are contained in a metal housing and are composed of switches. They are however, in our opinion more than switches. *United States* v. *A. W. Fenton Company, Inc.*, 49 CCPA 45, C.A.D. 794 (1962).

The provision for parts of an article having as an essential feature an electrical element or device has been held to be more specific than the provision for articles suitable for producing, rectifying, modifying, controlling or distributing electrical energy. *C. J. Tower & Sons of Buffalo, Inc.* v. *United States*, 53 Cust. Ct. 260, Abstract 68748 (1964). In the *Tower* case, *supra*, we had before us for determination the proper classification of certain range controls which were classified as switches and claimed to be parts of cooking stoves. We therein made the following statement:

> The provision for switches and switchgear was carved out of the first provision of paragraph 353 of the Tariff Act of 1930, which provided for all articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy. The provision covering cooking stoves and ranges was carved out of the third portion of said paragraph 353 of the Tariff Act of 1930, which provided for articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs. The statute as originally enacted also covers parts wholly or in chief value of metal of any of the foregoing.

In the case of *Charles M. Schayer* v. *United States*, 44 Cust. Ct. 134, C.D. 2167, this court considered whether certain electronic

feed controls for ore grinding machines were more specifically provided for as parts of an article having as an essential feature an electrical element or device, rather than under the provisions of paragraph 368(a) or as articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy under paragraph 353 of the Tariff Act of 1930, as modified. During the course of the decision, the court, after reviewing the case of *United States* v. *Herman H. Sticht & Co.*, 22 CCPA 40, T.D. 47048, made the following comment:

> By analogical reasoning, we are of the opinion that confronted as we are here with the relative specificity of the provision for "parts" of an article having as an essential feature an electrical element or device and the provision for "Articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy," both contained in paragraph 353 of the Tariff Act of 1930, as modified, *supra*, the provision for parts of an article having as an essential feature an electrical element or device more specifically describes instant electronic feed control.

Following the above reasoning, which in the instant case is even more compelling since the involved controls are parts of articles set forth *eo nomine* as exemplars, i.e., ovens and ranges, in paragraph 353, as originally enacted, we are of the opinion that the provision for articles having as an essential feature an electrical element or device and the parts provision applicable thereto, more specifically describe the imported merchandise than does the provision for switches and switchgear. This is so even assuming, *arguendo*, that the involved controls are switches since said provision was merely carved out of the first portion of paragraph 353, as originally enacted by trade agreement.

Defendant urges a distinction between the facts in the case at bar and the *Tower* case, *supra*, since the range controls involved therein were parts of one of the exemplars set forth in the provision as originally enacted in the Tariff Act of 1930. It is apparent for our language in the *Tower* case, *supra*, "which in the instant case is even more compelling since the involved controls are parts of articles set forth *eo nomine* as exemplars, * * *" that our opinion would have been the same even if ovens and ranges were not set forth as exemplars. The fact that they were set forth only made it more compelling.

In view of the foregoing and following the principles enunciated therein we hold the involved foot controls, typewriter controls, microphones and telephone adapters to be properly dutiable at 12½ or 11½ per centum ad valorem depending upon the date of entry under paragraph 353, *supra*, as claimed.

Judgment will be entered accordingly.